McKINNEY *v.* MISSOURI-KANSAS-TEXAS
RAILROAD CO. ET AL.

No. 93.   Argued January 27, 1958.—Decided June 23, 1958.

*John G. Laughlin, Jr.* argued the cause for petitioner.
With him on the brief were *Solicitor General Rankin,*
*Assistant Attorney General Doub* and *Samuel D. Slade.*

*M. E. Clinton* argued the cause and filed a brief for the Missouri-Kansas-Texas Railroad Co., respondent.

*Carroll J. Donohue* argued the cause for the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, respondent. With him on the brief was *Sam Elson*.

*Clarence M. Mulholland, Edward J. Hickey, Jr.* and *Richard R. Lyman* filed a brief for the Railway Employes' Department, AFL–CIO, as *amicus curiae*.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This case arises out of proceedings to enforce the claim of a veteran to re-employment rights under § 9 of the Universal Military Training and Service Act. 62 Stat. 604, 614–618, as amended, 50 U. S. C. App. § 459, as amended, 50 U. S. C. App. (Supp. V) § 459. More specifically, petitioner claims that he has been deprived of seniority rights to which he is entitled under the statute and the collective bargaining agreement in force between his employer, respondent railroad, and the union representing its employees.

Made part of the complaint filed in the District Court are provisions of the collective bargaining agreement regulating the relations between respondent and its employees, especially provisions relating to seniority and promotions. Employees are divided into three groups according to the functions they perform, with seniority defined within each group. Rule 10 provides that when new positions are available or vacancies occur in existing positions, such positions will be "bulletined" by the employer and employees may bid therefor. Rule 1 (3)(A) provides that, "Promotion will be confined to the group . . . with the exception that employes on positions enumerated in group two (2) will be given prefer-

ence over nonemployes in the assignment to positions in group one (1), based upon fitness and ability . . . ." Rule 15 states that, "An employe returning after leave of absence may return to former position or may, upon return . . . exercise seniority rights to any position bulletined during such absence."

The complaint alleges that petitioner was employed by respondent as a relief clerk-chief caller, a position classified under the collective bargaining agreement in group 2. On September 26, 1950, he left his employment for induction into the Armed Forces of the United States. Petitioner was still in the Armed Forces when respondent, pursuant to the procedure set forth in Rule 10 of the collective bargaining agreement, bulletined two group 1 positions to be filled. On September 8, 1952, the group 1 position of bill clerk was bulletined and a nonemployee assigned to it on September 15. On September 10, 1952, the group 1 position of assistant cashier was bulletined and a nonemployee assigned to it on September 22. Petitioner was separated from the military service on September 25, 1952, and on October 1 applied for re-employment with respondent. He was placed in the group 1 position of assistant cashier with a group 1 seniority date of October 7, 1952. Subsequently this position was abolished and petitioner reduced to a group 2 position. Respondent refused to allow petitioner to exercise claimed seniority rights to place himself in the group 1 position of bill clerk in place of the nonemployee who had been assigned to that position on September 15, 1952.

In the District Court petitioner contended that the group 1 seniority date assigned him on re-employment, October 7, 1952, was erroneous, and that under § 9 of the Universal Military Training and Service Act, *supra,* he was entitled to a seniority date of September 8 or September 10, 1952, the dates on which, if he had then been employed by respondent, he could have applied for the

bulletined group 1 positions. Such a seniority date, according to petitioner, would have entitled him to replace the nonemployee as bill clerk when the position of assistant cashier was abolished, and thus avoided reduction to group 2.

Petitioner prayed the District Court to order respondent to assign him the requested earlier seniority date and to permit him to place himself in the position of bill clerk, and in addition he sought compensation for wages lost as a result of being deprived of the group 1 position. The District Court dismissed the complaint for failure to state a cause of action under the Universal Military Training and Service Act, and the Court of Appeals for the Tenth Circuit affirmed. 240 F. 2d 8. Because of the importance of the question presented in the administration of the statute and the protection of veterans' rights thereunder, we granted certiorari. 353 U. S. 948.

The Court of Appeals correctly held that petitioner was not obliged, before bringing suit in the District Court under § 9 (d) of the Act, 62 Stat. 616, as amended, 50 U. S. C. App. (Supp. V) § 459 (d), to pursue remedies possibly available under the grievance procedure set forth in the collective bargaining agreement or before the National Railroad Adjustment Board. See 48 Stat. 1189–1193, 45 U. S. C. § 153. The rights petitioner asserts are rights created by federal statute even though their determination may necessarily involve interpretation of a collective bargaining agreement. Although the statute does not itself create a seniority system, but accepts that set forth in the collective bargaining agreement, it requires the application of the principles of that system in a manner that will not deprive the veteran of the benefits, in terms of restoration to position and advancement in status, for which Congress has provided. Petitioner sues not simply as an employee under a col-

lective bargaining agreement, but as a veteran asserting special rights bestowed upon him in furtherance of a federal policy to protect those who have served in the Armed Forces.

For the effective protection of these distinctively federal rights, Congress provided in § 9 (d) [1] of the Act that if any employer fails to comply with the provisions of the statute, the District Court, upon the filing of a petition by a person entitled to the benefits of the Act, has jurisdiction to compel compliance and to compensate for loss of wages. The court is enjoined to order speedy hearing

---

[1] "In case any private employer fails or refuses to comply with the provisions of subsection (b), (c) (1) or subsection (g) of this section, the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action: *Provided,* That any such compensation shall be in addition to and shall not be deemed to diminish any of the benefits of such provisions. The court shall order speedy hearing in any such case and shall advance it on the calendar. Upon application to the United States attorney or comparable official for the district in which such private employer maintains a place of business, by any person claiming to be entitled to the benefits of such provisions, such United States attorney or official, if reasonably satisfied that the person so applying is entitled to such benefits, shall appear and act as attorney for such person in the amicable adjustment of the claim or in the filing of any motion, petition, or other appropriate pleading and the prosecution thereof specifically to require such employer to comply with such provisions: *Provided,* That no fees or court costs shall be taxed against any person who may apply for such benefits: *Provided further,* That only the employer shall be deemed a necessary party respondent to any such action." 62 Stat. 616, as amended, 50 U. S. C. App. (Supp. V) § 459 (d).

in any such case and to advance it on the calendar, and the United States Attorney must appear and act for the veteran in the prosecution of his claim if reasonably satisfied that he is entitled to the benefits of the Act. Nowhere is it suggested that before a veteran can obtain the benefit of this expeditious procedure and the remedies available to him in the District Court he must exhaust other avenues of relief possibly open under a collective bargaining agreement or before a tribunal such as the National Railway Adjustment Board. On the contrary, the statutory scheme contemplates the speedy vindication of the veteran's rights by a suit brought immediately in the District Court, advanced on the calendar before other litigation, and prosecuted with the assistance of the United States Attorney. Only thus, it evidently was thought, would adequate protection be assured the veteran, since delay in the vindication of re-employment rights might often result in hardship to the veteran and the defeat, for all practical purposes, of the rights Congress sought to give him. To insist that the veteran first exhaust other possibly lengthy and doubtful procedures on the ground that his claim is not different from any other employee grievance or claim under a collective bargaining agreement would ignore the actual character of the rights asserted and defeat the liberal procedural policy clearly manifested in the statute for the vindication of those rights.

Section 9 of the Universal Military Training and Service Act, on which petitioner relies, requires that a returning veteran who has been separated from the service under the conditions set forth in the statute be restored by his employer to his former position or to a position of like seniority, status, and pay. He is not to be disadvantaged by serving his country. Section 9 (c)(1) states that he shall be restored "without loss of sen-

iority." [2]  In *Fishgold* v. *Sullivan Drydock & Repair Corp.*, 328 U. S. 275, 284–285, and *Oakley* v. *Louisville & N. R. Co.*, 338 U. S. 278, 283, the same provision in an earlier Act was interpreted to mean that a returning veteran does not step back at the exact point he left his employment, but rather is entitled to "a position which, on the moving escalator of terms and conditions affecting that particular employment, would be comparable to the position which he would have held if he had remained continuously in his civilian employment." 338 U. S., at 283. This interpretation is now embodied in § 9 (c)(2) of the present Act.[3]

However, § 9 (c) does not guarantee the returning serviceman a perfect reproduction of the civilian employment that might have been his if he had not been called to the colors. Much there is that might have flowed from experience, effort, or chance to which he cannot lay claim under the statute. Section 9 (c) does not assure him that

---

[2] "Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration." 62 Stat. 604, 615, as amended, 50 U. S. C. App. § 459 (c)(1).

[3] "It is hereby declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." 62 Stat. 604, 615–616, as amended, 50 U. S. C. App. § 459 (c)(2).

the past with all its possibilities of betterment will be recalled. Its very important but limited purpose is to assure that those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment will not be denied the veteran because of his absence in the military service. The statute manifests no purpose to give to the veteran a status that he could not have attained as of right, within the system of his employment, even if he had not been inducted into the Armed Forces but continued in his civilian employment.

Thus, on application for re-employment a veteran is not entitled to demand that he be assigned a position higher than that he formerly held when promotion to such a position depends, not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer. On his return from service, petitioner in the present case could not have demanded under the statute that respondent place him in any group 1 position. Promotion to a group 1 position from group 2, in which petitioner had formerly been employed, is not dependent simply on seniority. Under Rule 1 (3)(A) of the collective bargaining agreement it is dependent on fitness and ability and the exercise of a discriminating managerial choice. Collective bargaining agreements that include such familiar provisions are presupposed by the statute, and it is in their context that it must be placed. See *Aeronautical Lodge* v. *Campbell,* 337 U. S. 521, 527. Petitioner was not entitled to a group 1 position simply because in his absence it had been bulletined, and if he had then been employed he might have applied for it, and respondent might have found that he possessed the requisite fitness and ability. The statute does not envisage overriding an employer's discretionary choice by any such mandatory promotion.

Nor does it sanction interfering with and disrupting the usual, carefully adjusted relations among the employees themselves regarding opportunities for advancement.

The precise question in the present case is not essentially different. Petitioner was not, by virtue of the fact that the group 1 position of assistant cashier had been bulletined in his absence, entitled to that position on re-employment. Rule 15 of the collective bargaining agreement states that an employee who returns from leave of absence may "exercise seniority rights to any position bulletined during such absence." But seniority alone does not, under Rule 1 (3)(A), entitle an employee to move from group 2 to group 1; fitness and ability are also relevant. Respondent asserts that petitioner was in fact assigned to the group 1 position of assistant cashier through a mistake of law. Whatever the reason, the fact of employment in the higher position did not enlarge petitioner's rights under either the collective bargaining agreement or the statute. Since respondent was not obligated to give petitioner the higher position at all, when it did so it was not bound to give him a seniority date earlier than that to which any employee similarly promoted would have been entitled. In this case that was the date on which petitioner's pay in the group 1 position commenced, and not a month earlier when the position had first been bulletined.

Petitioner argues that because the complaint was summarily dismissed on motion he did not have the opportunity to prove that by custom and practice under the collective bargaining agreement he would necessarily have been assigned to the group 1 position of bill clerk or assistant cashier had he remained continuously in respondent's employ. He states that interpretation and practice by the parties to an agreement are frequently the most reliable bases for determining rights claimed to

arise under it. Accordingly, we affirm the judgment, but with leave to petitioner to amend his complaint to allege, if such be the fact, that in actual practice under the collective bargaining agreement advancement from group 2 to group 1 is automatic.

The judgment is

*Affirmed.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS dissent on the merits.