Phillip W. SULARZ, Appellant,

v.

MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILROAD CO., and System Federation No. 66 of the Railway Employes' Department of the American Federation of Labor, Appellees.

No. 15770.

United States Court of Appeals Eighth Circuit.

Nov. 10, 1958.

Hershel Shanks, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., George E. MacKinnon, U. S. Atty., St. Paul, Minn., and John G. Laughlin, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellant.

Richard R. Lyman, Toledo, Ohio, for appellee System Federation No. 66 of Railway Employes' Dept., A.F.L.-C.I.O.

Osborne Becklund, Minneapolis, Minn., for appellee Minneapolis, St. P. & S. S. M. R. Co.

Mulholland, Robie & Hickey, Washington, D. C., on the brief for appellees.

Before JOHNSEN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

The purpose of this action is to enforce the claim of a veteran to reemployment rights under Section 8 of the Selective Training and Service Act of 1940, as amended, 54 Stat. 885, 890, 50 U.S.C.A.Appendix, § 459.[1] More precisely, plaintiff seeks to compel his employer, Minneapolis, St. Paul & Sault

1. Now found as § 9 of the "Universal Military Training & Service Act," 62 Stat. 604, 615, 65 Stat. 75, 50 U.S.C.A. Appendix, § 459. For a detailed recital of amendments, see Sularz v. Minneapolis, St. Paul & Sault Ste. Marie R. Co., D.C., 148 F.Supp. 83, f.n. 1, p. 84.

Ste. Marie Railroad Co., for the sake of brevity called Company, to give him a seniority listing on the carman mechanic's roster at the repair track immediately below that of one Koniar (who immediately preceded plaintiff on the carman's helper roster on the date plaintiff departed for service), and, in any event, ahead of Lawrence W. Brown and Joseph J. Brinda, two non-veteran employees of Company, since they, being transferred from another division, did not even appear on the helper's roster at the repair track on that date.[2]

The material facts, concerning which there is no dispute, are fully and accurately recorded in the opinion of the trial court, Sularz v. Minneapolis, St. Paul & Sault Ste. Marie R. Co., D.C., 148 F.Supp. 83. For the purpose of this opinion, we adopt the facts as found by the trial court without reiteration thereof.

██ It is clearly demonstrated from the printed record in this case, the transcript of the trial proceedings, which we have also examined, and the opinion of the court to which reference has been made, that, in the trial court, plaintiff adopted and proceeded on the theory that a high probability test not only control-

led, but that under this test he was clearly entitled to the judgment sought.[3] It should be said that the case was tried and decided before the opinion in McKinney v. Missouri-Kansas-Texas Railroad Co., 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305, had been filed. On May 13, 1957, on motion of appellant, this Court entered an order staying further proceedings in this appeal until an opinion was rendered by the Supreme Court in the McKinney case. In briefs and oral argument before this Court, apparently because of the holding in McKinney, plaintiff has abandoned the trial theory and has sought to convince us that under the applicable labor contract between the Company and System Federation No. 66 of the Railway Employes' Department, A.F.L.-C.I.O. (the authorized collective bargaining representative of the craft of Company's employees known as carmen), and the custom and practices of the Company, plaintiff would have achieved the claimed status automatically and as a matter of right.

A careful examination of the record leads to the inescapable conclusion that seniority was not the sole factor to be applied in determining plaintiff's progression, that his right to advancement

---

2. By stipulation, it appears that the man immediately *below* plaintiff on the helper's roster at the repair track, when plaintiff left for service, was one Joseph Hofich. By agreement between the Company and the Union, seeking to adjust veterans' seniority rights, plaintiff was given the same seniority date on the carman mechanic's roster as that of Hofich, a non-veteran, who had been advanced to temporary carman during plaintiff's absence, and who had completed his four years' "apprenticeship," with seniority date on the mechanic's roster of July 3, 1948. Thus, although plaintiff did not actually complete his four years' "apprenticeship" until July 18, 1949, he enjoys a seniority date of July 3, 1948, and his name appears *above* that of Hofich.

3. It appears that an assertion of a strong or high probability of advancement was not successful even prior to the McKinney case, infra. See and compare:

Gregory v. Louisville & Nashville R. R. Co., 6 Cir., 191 F.2d 856, certiorari denied 343 U.S. 903, 72 S.Ct. 634, 96 L. Ed. 1323, affirming D.C., 92 F.Supp. 770, 777; Hewitt v. System Federation No. 152, 7 Cir., 161 F.2d 545; Lesher v. P. R. Mallory & Co., 7 Cir., 166 F.2d 983; Poore v. Louisville & Nashville Railroad Company, 5 Cir., 235 F.2d 687; Nevins v. Curtiss-Wright Corporation, 6 Cir., 172 F.2d 535; Addison v. Tennessee Coal, Iron & Railroad Co., 5 Cir., 204 F. 2d 340; Harvey v. Braniff International Airways, Inc., 5 Cir., 164 F.2d 521. In Raulins v. Memphis Union Station Co., 6 Cir., 168 F.2d 466, at page 469, the assertion was disposed of in these words:

"Although there is a strong probability that the appellants would have applied for promotion to the vacancies and would have been qualified, yet such promotion was not a matter of right or of certainty merely because of seniority."

was not automatic, and that, contrary to plaintiff's contention, he is not entitled to retroactive seniority status. The record fully justifies and supports the trial court's finding that "(t)here is no doubt that if plaintiff had remained with defendant (Company) during the war he would have been upgraded to a temporary carman mechanic some time during that period. But whether he would have been upgraded prior to the time Brown and Brinda were assigned duties as temporary carmen mechanics at the repair tracks is questionable. The evidence shows that seniority on the helpers' roster was only one of the factors in determining whether a man was to be upgraded to a temporary carman mechanic. Other factors, such as age, physical condition, ability to speak and understand English, and general aptitude for the work were also considered. The man who was in general supervision over hiring and upgrading of carmen at the Shoreham Yards testified that, if plaintiff had been at work with the railroad during the war, he believed management would have upgraded Brown and Brinda before plaintiff because they had more experience, had greater seniority, and were being asked to go from an inside job at the coach shop to an outside one at the repair tracks." 148 F.Supp. at page 87.

The record does not indicate that, under the applicable collective bargaining agreement, if plaintiff had not been in military service, he would have had an absolute contract right to be automatically promoted to the position of temporary carman ahead of Brown or Brinda. Since it is manifest that this is a strong or high probability situation, the trial court's conclusion finds full support in McKinney v. Missouri - Kansas - Texas Railroad Co., supra. That case authoritatively put to rest the question of whether returning veterans are entitled to retroactive promotions and seniority rights by holding that, to entitle the veteran to relief, the facts must show that the veteran would have been upgraded automatically, and that a strong probability of advancement will not suffice. There, it is said, 357 U.S. at page 271, 78 S.Ct. at page 1226:

"However, § 9(c) does not guarantee the returning serviceman a perfect reproduction of the civilian employment that might have been his if he had not been called to the colors. Much there is that might have flowed from experience, effort, or chance to which he cannot lay claim under the statute. Section 9 (c) does not assure him that the past, with all its possibilities of betterment will be recalled. Its very important but limited purpose is to assure that those changes and advancements in status *that would necessarily have occurred* simply by virtue of continued employment will not be denied the veteran because of his absence in the military service. The statute manifests no purpose to give to the veteran a status that he could not have attained as of right, within the system of his employment, even if he had not been inducted into the Armed Forces but continued in his civilian employment.

"Thus, on application for reemployment a veteran is not entitled to demand that he be assigned a position higher than that he formerly held when promotion to such a position depends, not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer." (Emphasis supplied.)

Following the McKinney case, and on August 18, 1958, the Fifth Circuit decided Bassett v. Texas & Pacific Ry. Co., 258 F.2d 819, where the facts disclosed that apprentice carmen and helper ap-

prentice carmen did not have an automatic right of succession, promotion or advancement to employment or seniority as carmen. On the authority of McKinney, the Court, there, in affirming judgment against the veteran, stated: "Only where the promotion or advancement is *automatic* can the veteran claim his right." 258 F.2d at page 823.

Affirmed.